Good afternoon your honors, Doug Keller on behalf of Mr. Krug. Because of the litany of errors in this case, Mr. Krug didn't get what the Constitution promises him, which is a fair trial. I think the the most pernicious and most straightforward error occurred during the testimony of Joseph DeVore, who the government called quote essential to its case. Mr. DeVore never heard Mr. Krug make the alleged if I shoot statement. Nevertheless, the prosecutor elicited from him that based on quote his training and experience, Mr. Krug had made a threat and he intended to carry it out. The government then had another witness to set repeat DeVore's conclusion that DeVore thought this was a threat, and the government highlighted it during closing. But of course this test... Did he render an opinion that in his training experience this was a true threat, or was it just a shorthand way of explaining, you know, I have some training experience and this is what motivated me to give the advice that I gave? He only testified that it was a threat, but a few things. One threat is still of course an element of the offense, and there is of course also substantial overlap between what constitutes a threat and what constitutes a true threat. So when you have an expert witness who's telling you that I've been in prisons for 21 years, I know that's a threat. Certainly the jury could have taken that, and I think they likely did take that as really strong evidence that Mr. Krug had in fact made a threat. Meaning that a reasonable person would believe that he was going to be harmed, or meaning that he intended... I mean, the true threat is essentially what would a reasonable person think and what did he in fact intend. So what would a jury have taken this to mean? I think certainly at the least they would have taken it as a threat, which is the subjective standard, but that subjective standard of course has substantial overlap. Sotomayor The subject standard meaning what Mr. Krug intended. Gannon Correct. Sotomayor Okay. Gannon And then once of course you buy that, that Mr. Krug intended to make an argument it's, I'm sorry, intended to make a threat, it's not a particularly large leap to get to a true threat. And so I think the fact that you had an expert witness telling the jury that an element of the offense, threat, had been met, they could certainly use that not only to say that a threat had been made, but also that a true threat had been made. Sotomayor Now the government says that that was not alluded to in closing argument, but you say it was. And that's a little bit of a direct contradiction. Gannon Sure. They absolutely said it during closing argument. This is on ER 539. I'll quote directly from the record. You heard from Joseph DeVore, the disciplinary hearing officer at the Mr. DeVore about the threat. Mr. DeVore confirmed it. Yes, this was a distinct threat. It qualified as a threat. And this also of course has to be viewed in the context of what happened in this case. This wasn't the only mistake that the government made. The government had a constant campaign of having witnesses tell the jury that yes, this was a threat, and that yes, Mr. DeVore said it properly remembered what Mr. Krug had allegedly said. Roberts You've got a plain error hurdle, don't you? Gannon Yes. Roberts What do you do with the fact that both the government and the court, the court and the jury instructions called special attention to the distinction between a threat and a true threat? Doesn't that take care of the problem? Gannon No, absolutely not. I mean, as I noted, at the end of the day, that threat definitely was an element of the offense. We know that that is an element of the offense. And we also know that while true threat and threat are different things, because they were being told it was a very short leap to, it also then qualified as a true threat. I mean, at the end of the day, this is hard to do. Kagan I guess the larger question inherent in what Judge DeVore was asking you is, is what about the prejudice question in general? Gannon Sure. The government had a difficult case to make here. Mr. Krug had two very plausible defenses to the charged crime, which is why it hung in the first trial. Kagan Well, one of them, which is that this wasn't said, was maybe not so plausible. But this isn't really relevant to that. Right? I mean, this issue is not relevant to whether it was said. It's relevant to the assessment of what was said. Gannon This particular point about DeVore is only relevant to the second point. But I will say that I absolutely disagree that his defense that Mr. Doucette didn't properly remember this wasn't a strong defense. At the end of the day, they had a — Mr. Krug and Mr. Doucette had a 30-minute conversation. In the middle of this 30-minute conversation, Mr. Krug allegedly made his 54-word statement. I don't think it's implausible that he might have misheard something. He might have only misheard a word or two, but of course a word or two could make all the difference in a case like this. But with respect to the other defense, whether this amounted to a threat, that was all — he also had a very plausible defense. The statement on its face wasn't literally a threat, of course, it was a conditional. Kagan Well, it was partly. It was conditional, but then it was written — and the rest of it was somewhat direct. I'm going to do this. Gannon I disagree. It was simply — he just simply said, if I shoot — Kagan That's the first thing he said, but then the second thing — Gannon — the following will happen. Kagan I'm sorry, what? Gannon He said, if I shoot, the following will happen, which is conditional. And you also remember this was made in the context of a prison, which also gives added insight into whether Mr. Krug was actually making a threat here. I also wanted to echo what this court said in its decision ala contra Castillo that, quote, that the government felt the need to engage in these improper tactics only enforces just how close the credibility contest was. In other words, that it's very easy for us on cold record to think this case was overwhelming, or at least, to use the government's word, there was ample evidence of guilt. But the prosecutors who saw this case, who lost the first case, and who weren't able to convict Mr. Krug, even of the more serious offense in the retrial, they thought they had to take these risks. And I think there's something to the fact that we should certainly defer to their opinions about what they needed to do to get their conviction. If the court doesn't have any more questions about the trial issues, I'd be happy to discuss the motion to dismiss. Okay. The rest of the trial issues, I mean, I agree with you that this is the strongest trial issue. The rest of them seem, the Ducett testimony, I mean, he was entitled to say how he regarded it, because there's a reasonable person standard, and presumably how somebody who actually heard it actually reacted to it is allowable. So that didn't seem to me to work. Well, that whole sort of train of argument flows from the Supreme Court decision in Watts, where a crowd heard someone say something, and the crowd laughed. And so the fact the crowd laughed was considered relevant context to what was said. They didn't introduce into evidence that the crowd then thought it wasn't a threat. The fact the crowd objectively laughed could certainly be something the jury could infer that that meant it was or wasn't a threat. So certainly the fact that Mr. Ducett took this threat seriously and all his actions consistent with that was relevant evidence. But the fact that he subjectively thought it was a threat is simply irrelevant, and it's incredibly misleading, because a jury could certainly think that they ought to defer to Mr. Ducett, since he's the one who heard it. And that's just simply not the law. Okay. Do you want to talk about the Speedy Trial? Sure, absolutely. Briefly, three, I think, points make the motion for Speedy Trial argument particularly strong. The first is that what happened in this case is a... I just want to say something. The time for this argument is a little short, so don't worry about going over a little. Go ahead. Okay. And I would like to quickly return just to one more point that Judge Nguyen raised a moment ago about the trial issues. And it was the question essentially asked, well, wasn't Mr. DeVore's testimony just relevant context to Ducett's reaction to what he heard? And I think it wasn't, first of all, relevant how DeVore reacted, period. But even if you could somehow cobble together some minimally relevant way in which DeVore's opinion was relevant to Ducett's reaction, it was incredibly prejudicial. In this court's decision in Hannah, it noted that having someone get on the stand and testify as an expert that something was a threat was, quote, significantly misleading. I think that that's exactly what we have here. So even if somehow this evidence was relevant, I certainly think it was improper and could have swayed a jury to convict in a closed case. And I'll also just add that the government didn't ask these questions in the first trial. Mr. DeVore was never asked, based on his training and experience, whether this amounted to a threat. So what? Where does that lead you? Well, it leads me to the fact that in the first trial, they weren't able to get a conviction. But in the second trial, when they made this argument, they were. And so I certainly think there's inference there that this... There were presumably other differences, too. We'd have to sit down with the two transcripts to figure that out. That's certainly true. And not only that, it was a different jury. Anyway, speedy trial. Speedy trial. Three main points, Your Honors. The first is that what happened in this case wasn't negligence. Negligence is not reasonably or diligently arresting someone. Well, the truth is we don't know what it is, because we don't know anything about what actually happened here. Right? Absolutely right. All we know is there was a 20-month period, and we don't know why. Yes, so I... We have no reason to think it was malicious in any way, but who lost what or whether anybody knew things and ignored them or exactly what happened, we don't know. We don't know. It's not on the record. So therefore, by default, aren't we talking about negligent? The burden of proof being to show some bad faith or recklessness? There is no evidence of bad faith or recklessness. In fact, the government has, in fact, conceded negligence. Well, a few things. One, the government bears the burden of proof here, and all the circumstantial evidence indicates that something was wrong here, and I think the record itself strongly points... But also, you asked for an evidentiary hearing, and you didn't get one. Right. We twice asked for an evidentiary hearing, and we didn't get one. And if you had one, you could have put somebody on and said, you know, where were the records kept and why was... who made the decision when to arraign them and what happened in the meanwhile, and so on and so on. You could have found something out about whether... Assuming, I'm sorry. ...somebody in the meanwhile had, you know, looked at this file and said, oh, let's just leave it alone, or what? What's the prejudice? I think that's your best factor. Well, the prejudice... The government's best... your toughest factor and the government's best argument. Well, a few things. One, if you either agree with me that this is recklessness, I think then this is an easy case for presumptive prejudice, and so I think then the burden shifts to the government. I also think if the court doesn't think there's enough in the record, at the very least, we ought to get an evidentiary hearing so the government can tell us what was happening during these two years. Connect for me the dots. Reckless, prejudice. Why, if it's reckless, is there, you're suggesting, automatically prejudice, as opposed to if it's negligent, there is no prejudice, or it's a different burden? Sure, yeah. Explain. Courts have linked the reason for the delay and the length of the delay to whether you need to make out, whether you either have presumptive prejudice or whether you have to prove prejudice. So if you have recklessness, which is obviously much worse than negligence, and you have a somewhat lengthy delay in a very simple case, all that adds up to a strong presumption of prejudice and the burden shifts to the government. And so... Well, the recklessness doesn't make it more likely that there's prejudice. It's kind of punishment or something. No, I agree with you it doesn't, as like a factual matter, make it more likely. But at the end of the day, what the Supreme Court has told us in cases like Barker and Doggett is that you have to look at this sort of pot of factors to determine whether it adds up enough to then create a presumption of prejudice, which... Well, right. But, I mean, if you had some evidence that this was purposeful, then it would make sense to link that to the presumption of prejudice, thinking, well, if they were prejudiced, it's higher because they must have thought there was a reason to try and delay it. But if you just prove recklessness, how does that hook up? Is there any case like that? No. There's no case with facts like this one. Can you answer Judge Nguyen's question about what is the actual prejudice? Let's say it's reckless. Somebody just threw it aside, the file, and never followed up on it. How is it prejudice? This is a case where, as far as I can tell from the government's witnesses recalling what happened, and it's a case where the defendant didn't testify to present the contrary side, where you could argue, well, people's memories must have faded, and there are two conflicting versions, and mine must be more correct because the government witness's memories have faded. Sure. I think, assuming we have the burden to prove prejudice, I think the important thing in this case is that it did, of course, hinge on the memory of Doucette and Mr. Krug. And even if he didn't testify, of course, his memory of what happened will help him cross-examine Mr. Doucette. And I think the thing that makes this case different and unique is that Mr. Doucette, as we know, memorialized what he thought he had remembered Mr. Krug saying. So he had memorialized the alleged threat. So over time, he was never going to forget that statement. All he could forget was context. And that context certainly could have put this at ease. Well, but in fact, Mr. Krug was interviewed right afterwards and gave a version. It wasn't this version. It wasn't the same version. It was a different version. But his was memorialized as well. Sure. Within a week or something, right? Sure. But that there's still more context to it. At the end of the day, of course, whether something's a threat is very context-dependent. And so even if we knew to a certainty what exactly was said, we still, of course, viewed it in context. But he was, in fact, I mean, he was told a week afterwards that or almost immediately afterwards that he was being brought up in internal charges, and he was given an interview, and he gave his version at that point. He gave his version. And I gather that that's memorialized. What the FBI agent recalls Mr. Krug saying is certainly memorialized. But he didn't necessarily give a full statement about the entire context of what happened. I mean, both Mr. Krug and even Mr. Doucette on the stand admitted they, of course, they forgot some things. It was many years. There was one person who said he didn't remember. He had a poor memory and didn't remember, but it seemed to cut in the other direction. I don't remember who that was. It was another prison official that Mr. Krug had called. But Mr. Doucette at the motion to dismiss, I'm sorry, at a pretrial hearing when he testified, testified, of course, he couldn't remember some things about the context of their conversation. I think that sort of just flows from our common experiences when something, you know, passes and there's three years that goes by. But he wasn't a witness, so the exact details can't matter very much. He didn't testify. I mean, one, I suppose one response might be, well, that's why he didn't testify, because he didn't remember, but he didn't say that. But it's more than that, though, because he needs to have a good memory of what was said in the context when he's cross-examining Mr. Doucette. Whether Mr. Doucette said something that was actually inconsistent with Mr. Krug's memory, that could be something he could pursue on impeachment. But, of course, since time has passed, we can't do that. So I certainly think he was prejudiced. Okay. So I've given you five, almost six, extra minutes. Can I ask one question? You said you had three points. Reckless was the first. What were the other two? We interjected prejudice. I don't know if that was one of yours or not. It wasn't. The other two points are, one, this was a very simple case, to use the prosecutor's own words. So the government didn't need a lot of time to prep for, to try this case. It was, they had five witnesses. They are all government witnesses. They essentially had wrapped up their investigation before he was even indicted. Is that your third point? The third point is that Mr. Krug was pro se during this time, and he was pro se because the government never brought him to court to arraign him. And so I think that has certainly an effect on the assertion of rights prong. He was an experienced pro se. He was, but at the end of the day, he wasn't a lawyer. So I think he did what even an experienced pro se would think you ought to do, which is try to litigate the case. Thank you. Okay. Thank you very much. We'll give you a minute in rebuttal. Mr. Ketchel. Good afternoon, Your Honors. May it please the Court, Aaron Ketchel for the United States. I'm happy to pick up on Mr. DeVore's testimony, if that's where the quote comes from. Can I interject for a minute? You can take some extra time, too, just for equity's sake, okay? I appreciate it, Your Honor. I'll pick up with Mr. DeVore's testimony, because I believe the Court indicated that they believe that may be Defendant's strongest argument here. And particularly point — I'd like to return to the page that the counsel was citing to in the government's closing argument, in which counsel asserted that the government conflated, in talking about Mr. DeVore's testimony, conflated threat with true threat. That's at ER 539. Well, can I say, first of all, that you said that there was no mention in the closing argument, and that's wrong. Are we on the same page that way? I'm sorry. Your brief says that it was not mentioned in closing argument, and that's incorrect. Mr. DeVore's testimony? Yes. That is incorrect. That is incorrect. But it was said in a different context. And this is exactly what we're talking about here. On ER 539, what's discussed here is Doucette's subsequent conduct after the threat and Mr. DeVore's involvement in that conduct in explaining what Mr. Doucette did. Counsel stopped reading at line 15 when he said it qualified as a threat. Seven lines down, at line 22, the government says, Now, ladies and gentlemen, we talked about the threat, and the words themselves are a threat without question. But as I talked about when we discussed the law, one thing that we need to find is whether this qualifies as a true threat. And a true threat is evaluated and looked at from a reasonable person standard, whether a reasonable person, a person of common The government clearly did not conflate these two factors. The government made it clear that to a layperson, it all sounds sort of like gobbledygook, doesn't it? I mean, a true threat is really a threat. So it's really what we're talking about in the first time. These are separate elements of the offense. These are distinctions that the court tells the jury they must draw, and it is emphasized repeatedly. There is testimony throughout the trial. The other point is that Mr. Keller's position was that DeVore's testimony didn't go to the reasonableness prong. It went to the subjective intent prong, i.e., he as an expert knew that Mr. Krug intended this to be taken seriously. First, DeVore was not offered as an expert witness. He wasn't offered as one, but he wasn't. He wasn't properly offered as one, but he was presented as one. Your Honor, we would argue he was not presented as one. There is a stray question buried in his testimony in which he's asked if his conclusion that it was a threat is based on his true and his – based on his trained experience. Our position, Your Honor, would be that that stray question cannot convert a lay opinion into expert opinion. Well, not properly it can't, but certainly in terms of what the jury heard, it was that this person is an expert and you should particularly believe him. That's what was said. But it has to be viewed in the context. With respect to the line of questioning in which that was asked, that line of questioning involved a long string of questions about the administrative procedures that Doucette followed after hearing a threat. Immediately following the question, after DeVore is asked whether he thought it was a threat, his next question was, and did you provide Doucette the codes he needed for his This was in a line of questioning about administrative procedures and made it clear that the thrust of the questions was about the reactions that Doucette took and – with respect to the threat that he heard. And this was further emphasized in closing. When the government talked about DeVore's testimony in closing, again … And in closing, they refer to him again as the expert in made violations and misconduct. Yes. Absolutely, Your Honor. They dealt with Mr. DeVore. Mr. DeVore confirmed, yes, this was a distinct threat, threatening a specific person that qualifies as a threat, and he was the expert. And the government should not have referred to him as an expert. But again, looking at it in the context, the context was we are talking about the actions that Doucette took and that DeVore's testimony about his involvement in those actions and Doucette's reaction was separate and apart from intent. And the government clearly pivoted to a separate question. And once the government pivoted to that question, the government did not rely on DeVore's testimony whatsoever. In fact, DeVore was not raised by the government for the balance of the summation or in rebuttal. DeVore never came up again after that point. So DeVore's testimony was really cabined for this particular point about what actions Doucette took. I'd like to get to another point that the Court elicited in its questions, which was about plain error. And I may have been, Judge Berzon asking about if this is intent, what did intent have to do with the government's proof? The thrust of this case was did defendants say the words that Doucette claimed he said? That was the thrust of the case. In my analysis of the defendant's closing argument, which I believe spanned 42 pages, less than one page of those 42 pages concerned his argument that this was a conditional threat, that, therefore, he didn't have the intent to make the threat. The balance of that statement, the balance of the argument was about attacking Doucette's credibility, saying that Doucette conspired with other BOP officials. But in the end, the jury did have to find the elements. Absolutely. And, therefore, if they disbelieved, as they undoubtedly did, Mr. Krug's statement that he didn't make the statement, then they had to construe the statement. Well. I mean, in other words, it was just an inevitable necessity, whatever his defense was, that they had to do this. And they did do it. In fact, they construed it differently from the way the government asked them to construe it. Yes, Your Honor. But I think what the record seems to indicate is that the defendant himself realized that this was not a strong argument for him to make about his intent. Well, the defendant is not exactly a reliable person in terms of what his best strategy was. Well, but he is counsel. And, I mean, we have to take him as counsel. That's the risk that he takes by proceeding pro se. And we have to treat him as an equal counsel in that regard. He argues to the jury, he says on, this is in GER 956, he says, quote, how do you prove you didn't say something? It's your word against his. And if he's got more credibility than you, you're going to lose that battle. The defendant realized that he was in a credibility battle with Doucette about whether he said those particular comments. And the government elicited substantial evidence at trial that showed that what Doucette claimed the defendant said was consistent with a long pattern of behavior by the defendant in prison and in prior conduct. I really think this is a counterproductive argument. I mean, the government in its closing recognized that the whole discussion we were just reading was about whether this was an offense or wasn't a true threat. They had to argue it, and they did argue it. Whether or not the defendant was focusing on it. Okay. Well, I certainly agree that the government recognized that this was an element of the offense that it needed to prove. But I think what the record reflects is the defendant realized that this was not where he should focus his attention because he wasn't going to be able to convince the jury that those words, if they were said, were not a true threat. Was there anything in the jury instructions that bring any clarity to this issue? Yes, Your Honor. The jury was instructed that there were elements to the offense. The first element was that there was a threat made. But then the instructions are further made clear that in order to avoid a First Amendment problem, the jury has to find that it was a true threat, meaning that it was a reasonable person who believed that the listener would have perceived it to be a threat that could be acted upon. And following the rebuttal argument by the government, the court gave a further instruction in which he reiterated that the government must prove its case beyond a reasonable doubt. What does it mean to have a threat that is a threat in some other sense? It's an expressed threat, a specific threat, but it's not a true threat. Isn't a true threat just a test of what's a threat? There are threats that can be made that could be said in a joking manner or in a — Well, then it's not a threat. And that is not a true threat. Well, it's not a threat at all. I mean, it seems to me that in ordinary English there's an enormous overlap, that a specification of what we legally mean by a threat that's culpable. Because, I mean, if I say something and it's a joke, then it's not — an ordinary person would say that's not a threat. Did he threaten you? No, he was kidding. I understand what the court is getting at, but I think these are fine distinctions that we find in the law all the time. One analogy I can think of is with regard to false statements. We have witnesses testify about lies and misrepresentations and false statements, but the jury is told that you must not only find that there was a lie, but that it was material. So similar here, colloquially — That's different. I'm sorry, but that's different. You can lie. It can be — that is a lie. It's not a lie. The question is, does it matter? That's a separate problem. But the question — if somebody says something like, oh, I'm going to kill that person. He really annoyed me that day. Well, nobody would — I mean, that's not a — could you say that's a threat, but it's not a true threat? Or would you say it's just not a threat? In ordinary parlance. In ordinary parlance, I think you could say that there are situations where the person making the threat intended it to be the threat, but the person — the listener, the one receiving the threat, did not. For example, a child — I think there's — somewhere in the record, there's an example of a child either pointing their fingers like a gun or threatening to do something at an adult. Certainly the child could be so angry that the threat — could act upon whatever they're threatening, but the listener, understanding the context of the situation, and a reasonable person would not believe that the listener interpreted that as a threat. That's why they are separate elements. I mean, these are separate elements to the offense, and both the court and the testimony emphasized that these are a distinction that the jury has to make. Do you want to talk about the speedy trial, too? Yes, Your Honor. With respect to — with respect to the speedy trial, and particularly the cause of the delay, defendant here attempts to import a scale of culpability with respect to cause that simply does not exist in the case law. Once the court determines that it is the government's fault for the delay, which the parties agree is the case here, it becomes a binary question. That is, did the government intend to hamper the defense in causing a delay? That's what Barker and Beeman say the court needs to ask. And here, there is — excuse me. Did they intend to cause — intend to hamper the defense in causing a delay or not? That's the issue. Here, defendant has never said that the government intended to cause a delay and has never made a proffer to that effect. In his motion to dismiss, he doesn't assert bad faith, or even that the government acted deliberately. This is very far-fetched, but suppose there was an evidentiary hearing and the person who was in charge of the file was up on the stand and he said, you know, why didn't you do anything about getting this guy arraigned? And he said, well, I knew the time was running and, you know, but I just — you know, I just didn't care. I just — I realized it could be a problem, but I just didn't worry about it. Now, would it make any difference with regard to prejudice then? It's kind of like the prison deliberate indifference standard. I realize there could have been a problem for this guy in terms of maybe making it harder to try the case. I wasn't trying to do that, but I didn't care. I think that's an interesting factual pattern, and I think here the facts of Barker are instructive. In Barker, there were two defendants charged with murder, and the government sought to have the first defendant be tried and tried and convicted so that that defendant would then cooperate against Barker. The first defendant's trial took a long time, and I believe there were maybe multiple trials. It ended up being that the government sought 16 continuances of Barker's trial, the last four of which were opposed by the defendant. And that lasted for a period of five years, four of which the court ultimately attributed to the government. Under those facts, a four-year delay where the government was affirmatively taking actions to delay a trial to benefit its own case, the Supreme Court still did not apply the stricter standard under the second factor, saying that the government intended to hamper the defense. So under this recklessness standard, there is no case that says that a recklessness standard changes the degree of prejudice. And it's certainly the defendant's burden under the case law to establish prejudice. Defendant has been unable throughout this period to establish prejudice and cannot do so here. Let me just return quickly to the second element and about the evidentiary hearing. The court gave the defendant every opportunity to put forward evidence that there was some type of bad faith or intent here. But he couldn't possibly do that. I mean, he had no idea what happened to this case for all that time, right? But for evidentiary hearings, this court has regularly required some proffer be made. It can't just be a fishing expedition. There needs to be some theory that the defendant wants to expose in an evidentiary hearing. And at ER 107, this is in the order denying the motion. Could he have gotten discovery if he tried? I'm sorry? Could he have had discovery? Any question? Perhaps. There is no request that I know for discovery. There was some documents that were provided to the court. But in denying the order at footnote 23 at ER 107, the court says that the defendant, quote, does not assert that he will be able to elicit any evidence at the evidentiary hearing that would make a material difference in resolving the motion. The defendant has waived that argument now. Did he have a lawyer at that point? Yes, Your Honor. If you could answer this for me, if failing to bring a prisoner to trial when he's been sending you a stream of litigation filings, if that's negligence, tell me what recklessness would look like. Well, again, Your Honor, our position would be there is no such thing as recklessness with respect to this factor. It may very well be recklessness under some other analysis. But with respect to the second factor under Barker, recklessness is not an issue. The issue is, was there an intention to hamper a defense? And there simply is nothing in the record that indicates that whatsoever. One final point, if I may. Does the record show whether there was one particular prosecutor assigned to this case who had the benefit of receiving? I know the government was in order to respond, but it was one single person with Mr. Craig's file who had gotten all these motions they attempted to file. As far as I can tell, Your Honor, from the record, all of the pleadings were sent to the criminal chief of the U.S. Attorney's Office, who obviously is a supervisory figure. Presumably said, this guy hasn't been arraigned. What is he bothering us for? I'm sorry? This guy hasn't been arraigned. Why is he bothering us? And just ignored it all. Do we know what his response to all those filings was, if anything? We don't. I mean, I will proffer to the court, the government sees this as a failure. The government takes this seriously and understands that this was a real problem and has since, not directly as a result of this, but I can proffer to the court that the U.S. Attorney's Office now uses an electronic case management system that would, should prevent a type of error like this happening. Let me ask you another completely extraneous question. Why is this case in California? Because the defendant was in California at Terminal Island at the point, at the time that he made the threat. Oh, I see. He wasn't at, I see. I thought he was in Kentucky. No. I thought the whole reason why they said they were going to do the other case first was because he was in Kentucky. Tennessee was where the other case happened. And he was tried in Tennessee. He was in Tennessee in custody at the time that he made, I'm sorry, he was out of custody actually at the time that he, I'm going to get the chronology, but I know that he made the threat when he was in Terminal Island. All right. Thank you. If I may just make one last quick point on the third element, which is something I noticed in preparing for argument. With respect to defendant's invocation of his speedy trial rights, after the motion to dismiss was denied and after defendant elected to go pro se, the court asked if the defendant was ready for trial. And at that point, defendant said that he was, quote, totally unprepared for trial and asked for a continuance. This is at ER 137. So it's difficult to see how the defendant could be entitled to the severe relief offered under the Sixth Amendment if the final continuance was one that was granted at defendant's request. Okay. Thank you very much. Thank you, Your Honors. We will give you one minute and one minute only since we let you both run over. Our time projections are often just not related to the particular case. I'll just try to make three quick points then. First, with respect to the distinction between threat and true threat, at the end of the day, I don't think the jury was going to draw these, like, And I also think the government's argument continually ignores the fact that threat was, in fact, an element. In both Hannah and Romo, the two cases where this court held that expert testimony about whether something was a threat was inappropriate, both those experts simply said the statement was a threat. This court didn't say it didn't matter, he didn't testify it was a true threat. This court thought the fact it was a threat was enough. Second, regarding the context that Mr. DeVore might have provided to Mr. Doucette, at the end of the day, what happened in this case is akin to someone making a threat out on the street. The person who hears a threat then goes and reports it to the police, hears the police tell them, yes, that was a threat, you should file a report. And then at trial, the government putting the cop on the stand and saying, did you think this was a threat based on your training and experience? Yes. And the government arguing, well, it was relevant because it provided context to this person's reaction. If that were the fact pattern, which I think is what happened here, I don't think this court would hesitate in finding that incredibly problematic. Okay. Thank you. Thank you very much. The case of United States v. Krug is submitted. We will go on to Paris v. Holland.
judges: Berzon, Nguyen, Zouhary